**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| IN RE ALLERVIE HEALTH PROFESSIONAL CORPORATION DATA BREACH LITIGATION | Civil Action No.: 4:25-CV-01333 |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS


I. **INTRODUCTION** ..... 1

II. **CASE SUMMARY** ..... 2

A. Background ..... 2

B. Procedural Posture ..... 2

C. Settlement Negotiations ..... 3

III. **THE PROPOSED SETTLEMENT PROVIDES CLASS MEMBERS WITH MONETARY AND NON-MONETARY BENEFITS COMPARABLE TO OTHER DATA BREACH SETTLEMENTS** ..... 3

A. The Settlement Class ..... 3

B. The Settlement Benefits ..... 4

i. Documented Loss Payment ..... 4

ii. *Pro Rata* Cash Payment ..... 4

iii. Identify Theft Protection and Credit Monitoring ..... 4

iv. Remedial Business Practice Changes ..... 4

C. Notice ..... 5

D. Claims, Exclusions and Objection Procedures ..... 6

i. Claims ..... 6

ii. Exclusions ..... 6

iii. Objections ..... 6

E. Service Awards, Fees, and Costs ..... 7

F. Release ..... 8

IV. **LEGAL STANDARD** ..... 8

V. **ARGUMENT** ..... 9

A. The Settlement Class Should be Preliminarily Certified ..... 9

i. The Settlement Class is Sufficiently Numerous ..... 11

ii. Questions of Law and Fact Are Common to the Settlement Class ..... 11

iii. Plaintiffs' Claims and Defenses are Typical of the Settlement Class .................. 12

iv. Plaintiffs and Class Counsel Will Provide Fair and Adequate Representation of the Settlement Class .................. 13

v. Rule 23(b)(3)'s Requirements Are Satisfied .................. 14

B. The Terms of the Settlement are Fair, Reasonable, and Adequate and Warrant Preliminary Approval Under Rule 23(a)(4) .................. 15

i. Plaintiffs and Class Counsel have Adequately Represented the Settlement Class (Fed. R. Civ. P. 23(e)(2)(A)) .................. 16

ii. The Settlement Is the Product of Good-Faith Arm's-Length Negotiations, and Is Absent of Any Collusion (Fed. R. Civ. P. 23(e)(2)(B)) .................. 17

iii. The Settlement Agreement Provides Substantial Relief to the Settlement Class, in Light of the Uncertainty of Prevailing on the Merits, the Effectiveness of the Proposed Distribution of Relief, and the Attorneys' Fees Sought (Fed. R. Civ. P. 23(e)(2)(C)) .................. 18

iv. The Proposed Settlement Treats Settlement Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D)) .................. 20

v. The *Reed* Factors Considered by Fifth Circuit Courts also Weigh in Favor of Preliminary Approval .................. 21

D. The Court Should Appoint Class Counsel .................. 23

C. The Proposed Claims Administrator Will Provide Adequate Notice .................. 23

**VI. CONCLUSION** .................. 24

# TABLE OF AUTHORITIES

***Cases***

*Adlouni v. UCLA Health Systems Auxiliary, et al.*,

No. BC 589243 (Los Angeles Super. Ct.) .......... 19

*Al's Pals Pet Care v. Woodforest Nat'l Bank*, NA,

No. H-17-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019) .......... 16

*Amchem Prods., Inc. v. Windsor*,

521 U.S. 591 (1997) .......... 10, 11, 13, 15

*Atkinson, et al. v. Minted, Inc.*,

No. 3:20-cv-03869-VC (C.D. Cal.) .......... 19

*Ayers v. Thompson*,

358 F.3d 356 (5th Cir. 2004) .......... 22

*Billitteri v. Secs. Am., Inc.*,

Nos. 3:09-cv-01568- F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) .......... 25

*Bingaman, et al. v. Avem Health Partners Inc.,*

Case No. CIV23-130-SLP (W.D. Ok.) .......... 19

*Braun v. Philadelphia Inquirer, LLC*,

No. 22-cv-4185-JMY, 2025 WL 1314089 (E.D. Pa. May 6, 2025) .......... 22

*Brown v. Transurban USA, Inc.*,

318 F.R.D. 560 (E.D. Va. 2016) .......... 14

*Cotton v. Hinton*,

559 F.2d 1326 (5th Cir. ) .......... 22

*Dehoyos v. Allstate Corp.*,

240 F.R.D. 269 (W.D. Tex. Feb. 21, 2007)....................................................................... 9

*Eisen v. Carlisle and Jacquelin*,

417 U.S. 156 (1974) ........................................................................................................ 24

*Erica P. John Fund, Inc. v. Halliburton Co.*,

No. 02-CV-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018)................................. 10, 17

*Feder v. Elec. Data. Sys. Corp.*,

429 F.3d 125 (5th Cir. 2005)............................................................................................ 13

*Fox v. Iowa Health Sys.*,

No. 3:18-cv-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021)................................... 22

*Fulton-Green v. Accolade, Inc.*,

No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ...................................................... 22

*Garza v. Sporting Goods Props., Inc.*,

No. CIV. A. SA-93- CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996)................................ 9

*Gray v. Hearst Commc'ns, Inc.*,

444 F. App'x 698 (4th Cir. 2011)........................................................................................ 14

*Hammond v. The Bank of N.Y. Mellon Corp.*,

No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ................. 20, 22

*Hapka v. CareCentrix, Inc.*,

No. 2:16-cv-02373-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) .................................. 15

*In re Anthem, Inc. Data Breach Litig.*,

327 F.R.D. 299 (N.D. Cal. 2018) ..................................................................... 12, 14, 15

*In re Beef Indus. Antitrust Litig.*,

607 F.2d 167 (5th Cir. 1979) ........................................................................................ 8

*In re Combustion, Inc.*,

968 F. Supp. 1136 (W.D. La. 1997) ............................................................................ 19

*In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*,

No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ...................................... 12

*In re Deepwater Horizon*,

739 F.3d 790 (5th Cir. 2014) ...................................................................................... 12

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,

No. 1:17-md-2800-TWT, 2019 WL 937735 (N.D. Ga. 2019) ............................... 11, 12, 13, 14

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

293 F.R.D. 21 (D. Me. 2013) .................................................................................. 20, 22

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,

851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................ 11, 12, 15

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,

310 F.R.D. 300 (E.D. La. 2015) ...................................................................................... 9

*In re Shell Oil Refinery*,

155 F.R.D. 552 (E.D. La. 1993) ................................................................................ 8, 19

*In re Target Corp. Customer Data Sec. Breach Litig.*,

309 F.R.D. 482 (D. Minn. 2015) .................................................................................. 11

*In re Target Corp. Customer Data Sec. Breach Litig.*,

No. 14-2522, 2015 WL 7253765 (D. Minn. Nov. 17, 2015) ................................................ 21

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,

No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ........................ 12, 15

*In re TikTok, Inc. Consumer Privacy Litig.*,

617 F. Supp. 3d 904 (N.D. Ill. 2022) ........................................................................ 21

*In re: Wright & Filippis, LLC.*,

No. 2:22-cv-12908-SFC-EAS (E.D. Mich.) ................................................................ 19

*Jenkins v. Trustmark Nat'l Bank*,

300 F.R.D. 291 (S.D. Miss. 2014) ............................................................................ 20

*Jones v. Singing River Health Servs. Found.*,

865 F.3d 285 (5th Cir. 2017) .................................................................................... 17

*Kesner, et al. v. UMass Memorial Health Care, Inc.*,

No. 2185-cv-01210 (Mass. Supp. Ct.) ....................................................................... 19

*Kostka v. Dickey's Barbecue Restaurants, Inc.*,

No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) .................................. 13

*M.D. v. Perry*,

294 F.R.D. 7 (S.D. Tex. 2013) .................................................................................. 13

*Madkin v. Automation Personnel Services, Inc.*,

No. 2:21-cv-1177 (N.D. Ala.) .................................................................................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,

339 U.S. 306 (1950) ................................................................................................. 24

*Mullen v. Treasure Chest Casino*, LLC,

186 F.3d 620 (5th Cir. 1999) .................................................................................... 11

*Nelson v. Constant*,

No. 17-14581, 2020 WL 5258454 (E.D. La. Sept. 3, 2020) .............................................. 10, 12

*ODonnell v. Harris Cnty.*,

No. H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) .......................................... 10, 16

*Reed v. Gen. Motors Corp.*,

703 F.2d 170 (5th Cir. 1983) ............................................................................................... 16

*Stillmock v. Weis Markets, Inc.*,

385 F. App'x 267 (4th Cir. 2010) ......................................................................................... 14

*Stirman v. Exxon Corp.*,

280 F.3d 554 (5th Cir. 2002) ............................................................................................... 13

*Stott v. Cap. Fin. Servs. Inc.*,

277 F.R.D. 316 (N.D. Tex. Sep. 12, 2011) ..................................................................... 16, 25

*Vaughn v. Am., Honda Motor Co.*,

627 F. Supp. 2d 738 (E.D. Tex. 2007) ................................................................................. 18

*Wal-Mart Stores v. Dukes*,

564 U.S. 338 (2011) ............................................................................................................. 11

*Welsh v. Navy Fed. Credit Union*,

No. 16-CV1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ................................ 17

*Winstead v. ComplyRight, Inc.*,

No. 1:18-CV-4990 (N.D. Ill.) ............................................................................................... 19

***Other Authorities***

2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011) ........................................................... 17

2 Newberg & Conte, *Newberg on Class Actions* (3d ed. 1992) .................................................... 8

7A Charles Wright, Arthur Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE (3d ed. 2005) ..... 15

7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE (3d ed. 2006) ..... 23

Fed. R. Civ. P. 23 ..... passim

*Manual for Complex Litigation* § 21.632 (4th ed.) ..... 10

*Manual for Complex Litigation* § 30.44 (4th ed.) ..... 9

Plaintiffs Matthew Nolan, Ryan Gruesser, and Kim Redwine Carter submit this Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support.

## I. INTRODUCTION

From on or about October 24, 2025 through November 3, 2025, the ransomware group Anubis took advantage of a vulnerability in AllerVie's[1] system to gain access to its network and stole Private Information belonging to Plaintiffs and Class Members, including names, Social Security Numbers, driver's license numbers, state identification numbers, and assorted PHI such as provider names, primary insurance names, and more sensitive health information as well of the victims. Plaintiffs brought a class action suit against Defendant for its alleged failure to safeguard their Private Information. AllerVie denies all liability and wrongdoing.

After informal discovery and a full-day, arm's-length mediation with experienced mediator Steven Jaffe, Esq. of Upchurch Watson White & Max on May 22, 2026, the Parties reached agreement on the material terms of a classwide settlement. Under the Settlement, Defendant will fund a non-reversionary Settlement Fund of $1,650,000.00 to pay Cash Payments and Credit Monitoring, Settlement Administration Costs, and any Court-awarded attorneys' fees, costs, and Service Awards. In addition, Defendant has agreed to implement meaningful cybersecurity enhancements to its system. The Class Action Settlement Agreement and Release ("Settlement," "Settlement Agreement," or "SA") is attached hereto as **Exhibit 1**.

For the reasons stated below, the Settlement is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that the Settlement be preliminarily approved by the Court.

---

[1] Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

## II. CASE SUMMARY

### A. Background

AllerVie Health Professional Corporation is a national network of healthcare providers that specialize in allergy and immunology services. It is headquartered in Frisco, Texas, and operates allergy patient care clinics for children and adults. In the ordinary course of its operations, Defendant collects patients' personally identifiable information and protected health information, including diagnostic histories, medication lists, insurance documents, billing data, and clinical visit records. Accordingly, as part and parcel of its business practices and to provide services to its patients, AllerVie collects, stores, and maintains patients' Private Information. On or about November 2, 2025, cybercriminals infiltrated AllerVie's computer systems and stole the Private Information of Plaintiffs and Class Members in the Data Incident.

### B. Procedural Posture

After receiving Notice of the Data Incident, Plaintiff Ruth Safford initiated the first filed action against Defendant in this Court. Thereafter, Defendant was named in two additional related putative class actions that were materially and substantively identical, that had overlapping claims, sought to represent the same putative class members, and arose out of the same Data Incident. Plaintiffs in those actions filed an Unopposed Motion to Consolidate Cases and Appoint Interim Class Counsel. On February 17, 2025, the Court consolidated the actions and appointed William B. Federman of Federman & Sherwood, Raina Borrelli of Strauss Borrelli PLLC, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC as Interim Co- Lead Class Counsel. The consolidated matter proceeds under Master File No. 4:25-cv-01333-ALM in this Court. Following consolidation, Plaintiffs filed a Consolidated Class Action Complaint on April 9, 2026, alleging negligence/negligence *per se*, breach of implied contract, declaratory judgment and injunctive relief.

### C. Settlement Negotiations

Shortly thereafter, the Parties began discussing settlement and scheduled a mediation with experienced mediator Steven Jaffe, Esq. of Upchurch Watson White & Max. In advance of the mediation, the Parties exchanged mediation statements, providing information related to, among other things, the nature and cause of the Data Incident, the number of victims impacted, and the specific type of information breached. Joint Declaration of Class Counsel ("Joint Decl.") attached hereto as **Exhibit 2**, ¶ 7.

The Parties participated in a virtual mediation on May 22, 2026. *Id.* ¶ 8. Following a full day mediation of arms-length negotiations between experienced counsel, the Parties reached an agreement on the material terms of a classwide settlement. *Id.* Over the next several weeks, the Parties continued negotiations regarding the particular terms of the Settlement Agreement and associated exhibits. *Id.* ¶ 9. The Parties now agree to settle the Action entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties.

## III. THE PROPOSED SETTLEMENT

### A. The Settlement Class

The Settlement Class is defined as "all residents of the United States whose Private Information was potentially exposed in the Data Incident, including all individuals who were sent a breach notification letter." SA, ¶ 63. Specifically excluded from the Settlement Class are: (i) Defendant and its respective officers and directors; (ii) all members of the Settlement Class who timely and validly request exclusion from the Settlement Class; and (iii) the Judge assigned to evaluate the fairness of this settlement. *Id.*

### B. The Settlement Benefits

#### 1. Documented Loss Payment

All Settlement Class Members are eligible to submit a claim for reimbursement of out-pocket-losses of up to $5,000.00 per Settlement Class Member. *Id.* ¶ 72(a). To receive a documented loss payment, the Settlement Class Member must attest to incurring unreimbursed losses as a result of the Data Incident and submit reasonable, third-party documentation supporting the claimed losses. *Id*.

#### 2. *Pro Rata* Cash Payment

Alternatively, all Settlement Class Members may file a claim for a *pro rata* cash payment of $50.00 from the Settlement Fund. *Id.* ¶ 72(b). This payment shall be in the form of a flat cash payment with an estimated value of $50.00 (subject to *pro rata* adjustment based on the number of claims). *Id.* Receipt of this *pro rata* cash payment is conditioned only upon submitting a Valid Claim. *Id.*

#### 3. Identify Theft Protection and Credit Monitoring

In addition to the monetary relief available under the Settlement, Settlement Class Members may elect to receive two years of CyEx Medical Shield Complete. *Id.* ¶ 72(c). The provided service will include report and score, dark web monitoring, identity protection services, identity resolution services, and $1,000,000.00 in identity theft insurance.

#### 4. Remedial Business Practice Changes

In addition to the foregoing benefits, all Settlement Class Members will benefit from substantial business practice changes and remedial measures aimed at preventing further unauthorized access to their sensitive PII entrusted to AllerVie. *Id.* ¶ 74. Defendant estimates that the cost of implementing and maintaining the remedial measures will be an estimated cost of $90,000 per year. *Id.* This cost will be borne by Defendant separately from the establishment of

the Settlement Fund and will in no way impact the relief available to the Class. *Id*. These business practice enhancements are incurred to the benefit of Settlement Class Members whose information remains in AllerVie's possession.

**C. Notice**

The Parties agreed to engage Epiq as the Settlement Administrator. *Id.* ¶ 61. Within five days of entry of the Preliminary Approval Order, AllerVie will provide the Settlement Administrator with the Class List of all Settlement Class Members. *Id.* ¶ 28. The Settlement Administrator will promptly send Notice all Settlement Class Members via direct mail and complete all Notice within thirty (30) days of entry of the Preliminary Approval Order. *Id*. ¶ 81. The Short Form Notice is clear and concise and provides information about the Settlement as well as the sources Settlement Class Members can go to for additional information. *Id.*, ¶ 82; *see also id.*, Exhibit C. In addition to the individual direct notice provided, the Settlement Administrator will establish and maintain a dedicated Settlement Website no later than the day before the Notice Plan is initiated that will contain broad information including but not limited to copies of the Complaint, the Settlement Agreement, the Preliminary Approval Order, Long Form Notice, answers to FAQs, both online and printable versions of the Claims Form, as well as other relevant court documents. *Id*. ¶ 83. The Long Notice is the detailed notice that will include robust information about the Settlement. *Id.* ¶¶ 84–85; *see also id.*, Exhibit B. The Settlement Administrator will also establish and maintain a toll-free help line for class members to call with settlement-related inquiries. *Id*. ¶ 79(f). The cost of providing notice and claims administration will be paid by AllerVie from the Settlement Fund.

### D. Claims, Exclusions and Objection Procedures

The timing of the Notice Plan is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object.

#### 1. Claims

Settlement Class Members will have up to and including 15 days before the initial scheduled Final Approval Hearing to complete and submit a claim to the Settlement Administrator. *Id.* ¶ 24. The Claim Form is written in plain language to facilitate Settlement Class Members' ease in completing it. *Id.*, Exhibit A. Claim Forms can be submitted either online through the Settlement Website, or via U.S. Mail to the P.O. Box maintained by the Settlement Administrator. *Id.* ¶ 89.

#### 2. Exclusions

A Settlement Class member may request to be excluded or "opt-out" of the Settlement Class at any time before the Opt-Out Deadline (*i.e.*, thirty days before the initial Final Approval Hearing) by mailing a Request for Exclusion to the Settlement Administrator. *Id.* ¶¶ 48, 84–85. The Opt-Out Deadline will be included on both Notices and posted on the Settlement Website. *Id.* To be considered valid, the Request for Exclusion must be signed by the individual seeking to opt-out and must clearly convey their intent to opt-out of the Settlement Class. *Id.* Any member of the Settlement Class who elects to be excluded in a timely manner shall not be bound by the Settlement.

#### 3. Objections

The Long Notice also shall detail the procedure for Settlement Class Members to object to the Settlement or Plaintiffs' upcoming motion for attorneys' fees, costs, and Service Awards. *Id.* Exhibit B. The Short Notice shall direct Settlement Class Members to review the Long Notice to obtain the objection instructions. *Id.* Exhibit C. To be valid, objections must be filed with the Court,

and sent by U.S. Mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator before the Objection Deadline (*i.e.*, thirty days before the initial Final Approval Hearing). *Id.* ¶ 48. Similar to the timing of the claims process, the timing with regard to objections is structured to give Settlement Class Members sufficient time to review the Settlement documents.

All objections must include: (i) the objector's full name, address, telephone number, and e-mail address; (ii) all grounds for the objection; (iii) the identity of the objector's counsel (if any); (iv) the number of times the objector and his/her counsel have filed an objection to a class action settlement in the last five years; (v) whether the objector and/or his or her counsel have used artificial intelligence to assist in drafting their objection; (vi) whether the objector and/or his or her counsel will appear at the Final Approval Hearing; (vii) a list of all persons who the objector plans to call to testify at the Final Approval Hearing, and (viii) the objector's signature. *Id.* ¶ 86. Any Settlement Class Member who fails to object in this manner will be deemed to have waived any objections.

**E. Service Awards, Fees, and Costs**

Under the Settlement Agreement, Plaintiffs may seek a reasonable service award to in the amount of $2,500.00 per Plaintiff in recognition of the time and effort they expend as class representatives. *Id.* ¶ 103. Under the Settlement Agreement, Class Counsel may seek attorneys' fees up to one-third of the Settlement Fund and reimbursement of reasonable litigation expenses *Id.* ¶ 104. The settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service awards to the Plaintiffs until after the substantive terms of the settlement had been agreed upon. Joint Decl., ¶ 20. The Service Awards, attorneys' fees, and reimbursement of litigation expenses will be sought separately by motion and are subject to approval of the Court.

**F. Release**

The release in this case is tailored to the claims that have been pled or could have been pled relating to the specific Data Incident. SA, § XIII.

## IV. LEGAL STANDARD

Fed. R. Civ. P. 23(e) requires court approval of any class settlement, following notice to the class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992); *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 175 (5th Cir. 1979). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir.1983); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). At this preliminary approval stage, the court must consider whether the settlement appears fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL NO. 2047, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012).

The standards at preliminary approval are not as stringent as those applied to a motion for final approval. *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015) (citing *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007)). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. at 314–15.

Plaintiffs seek preliminary approval of the proposed Settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation* § 30.44 (4th ed.). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2) and certify the Settlement Class for purposes of Settlement. Settlement agreements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. Feb. 21, 2007) (quoting *Garza v. Sporting Goods Props., Inc.*, No. CIV. A. SA-93- CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996)).

Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding settlement agreements fair, reasonable and adequate—particularly when they have been reached by experienced counsel after a meaningful exchange of information. *ODonnell v. Harris Cnty.*, No. H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019) (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02-CV-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.*, 910 F. Supp. 2d 891, 930–31 (E.D. La. 2012)).

## V. ARGUMENT

### A. The Settlement Class Should be Preliminarily Certified.

Plaintiffs seek certification of the Settlement Class consisting of "all living individuals residing in the United States whose Private Information was impacted in the Data Incident" with specific and limited exclusions. SA, ¶ 63. In cases presented for both preliminary approval and

class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." *Manual for Complex Litigation* § 21.632 (4th ed.).

Under Rule 23, a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *Nelson v. Constant*, No. 17-14581, 2020 WL 5258454, at *4 (E.D. La. Sept. 3, 2020). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

At the settlement phase, a court considers class certification only in the context of settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Thus, the court's evaluation is different than in a case that has not yet settled. *Id.* Indeed, the court's review of certification of a settlement-only class is lessened as a trial is no longer anticipated and the case management issues inherent in the ascertainable class determination need not be confronted. *See id*. Thus, it is unsurprising that data breach class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a national basis—including the record-breaking settlement in *In re Equifax*. *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 362 F.Supp.3d 1295 (N.D. Ga. 2019); *see, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case is no different.

**1. The Settlement Class is Sufficiently Numerous.**

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has noted that a class of 100 to 150 members "is within the range that generally satisfied the numerosity requirement." *Mullen v. Treasure Chest Casino*, LLC, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Data Breach at issue affected over 80,000 individuals[2], clearly exceeding the 100-to-150-member threshold set by the Fifth Circuit. Accordingly, the Settlement Class is sufficiently numerous to justify certification.

**2. Questions of Law and Fact Are Common to the Settlement Class.**

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high. Commonality does not require that every question be common to every member of the class, but rather that the questions linking class members be substantially related and capable of generating common answers "apt to drive the resolution of the litigation." *In re Heartland Payment Sys*., 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *Nelson*, 2020 WL 5258454, at *5 (quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)).

Courts have previously addressed this requirement in the context of data breach class actions and found it readily satisfied. *In re Equifax*, 2020 WL 256132, at *12 (citing *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016)) (finding that multiple common issues center on the defendant's conduct, satisfying the commonality requirement); *In re Anthem, Inc. Data Breach*

---

[2] Steve Alder, AllerVie Health Patients Affected by Ransomware Attack, The HIPAA Journal (Dec. 31, 2025), available at https://www.hipaajournal.com/allervie-health-data-breach/

*Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. 2018) (noting that the data breach complaint contains a common contention capable of class-wide resolution—one type of injury allegedly inflicted by one actor in violation of one legal norm).

The commonality requirement is met in this case. Multiple questions of law and fact are common to the class including, but not limited to, whether: (1) Defendant engaged in the conduct alleged here; (2) Defendant's data security systems prior to and during the Data breach were consistent with industry standards; (3) Defendant's data security systems prior to and during the Data Incident complied with industry standards; (4) Defendant was negligent in failing to adhere to reasonable data retention policies; and (5) Defendant breached duties to protect Plaintiffs' and Class Members' Private Information. (ECF No. 16, ¶ 232).

Like in other data breach cases, these common issues all center on Defendant's conduct or other facts and law applicable to all class members. *See, e.g., In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig*., No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys*, 851 F. Supp. 2d at 1054 ("Answering the factual and legal questions about Heartland's conduct will assist in reaching class wide resolution."). Defendant's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another. Thus, the element of commonality is readily satisfied.

**3. Plaintiffs' Claims and Defenses are Typical of the Settlement Class.**

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).

This requirement is readily satisfied in data breach cases like this one. Plaintiffs' claims are typical of other Settlement Class Members because they arise from the same Data Incident and involve the same overarching legal theories. *See, e.g.*, *In re Equifax*, 2020 WL 256132, at *12. Further, District Courts within the Fifth Circuit have held that a finding of typicality often follows from a finding of commonality. *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K, 2022 WL 16821685, at *7 (N.D. Tex. Oct. 14, 2022); *M.D. v. Perry*, 294 F.R.D. 7, 29 (S.D. Tex. 2013).

**4. Plaintiffs and Class Counsel Will Provide Fair and Adequate Representation of the Settlement Class.**

"The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. To satisfy the adequacy of representation requirement, plaintiffs must establish: (1) the zeal and competence of the representatives' counsel; and (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiffs' and Settlement Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for the same financial and other relief. Further, proposed Class Counsel as set forth below are abundantly qualified and experienced in leading class cases efficiently and effectively and have the support of all counsel of record, thus satisfying the adequacy requirement. Joint Decl., Exhibits A–D. Finally, neither the Plaintiffs nor Class Counsel have any interests antagonistic to the Settlement Class.

**5. Rule 23(b)(3)'s Requirements Are Satisfied.**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One part of the superiority analysis—manageability—is irrelevant for purposes of certifying a settlement class. *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 569 (E.D. Va. 2016).

Common liability issues predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant."). Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendant. *See, e.g.*, *In re Equifax*, 2020 WL 256132, at *13; *In re Anthem*, 327 F.R.D. at 311–16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Anthem*, 327 F.R.D. at 312. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02373-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018); *In re The Home Depot, Inc.*, 2016 WL 6902351, at *2; *In re Heartland*, 851 F. Supp. 2d at 1059.

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . ." 7A Charles Wright, Arthur Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1779 (3d ed. 2005). Litigating the same claims of over 66,000 persons through individual litigation would obviously be inefficient compared to resolving them all under the umbrella of a single case. Additionally, the proposed

Settlement will give the Parties the benefit of finality. Because this case has now been settled pending Court approval, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case …would present intractable management problems…"). Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating tens of thousands of individual cases arising out of the same Data Incident. The superiority requirement thus is satisfied.

In sum, the requirements of Rule 23(b)(3) are met. Accordingly, the Settlement Class should be certified for settlement purposes.

**B. The Terms of the Settlement are Fair, Reasonable, and Adequate and Warrant Preliminary Approval Under Rule 23(a)(4).**

After determining that certification of the Settlement Class is appropriate, the Court must determine whether the Settlement Agreement itself is worthy of preliminary approval and of providing notice to the class. Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)–(iv).

Before the 2018 revisions to Rule 23(e), the Fifth Circuit developed its own factors for determining whether a settlement was fair, adequate, and reasonable including: (1) evidence that the settlement was not obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members (the "*Reed* Factors"). *Stott v. Cap. Fin. Servs. Inc.,* 277 F.R.D. 316, 343 (N.D. Tex. Sep. 12, 2011) (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)). Because the Rule 23 and *Reed* factors overlap, Fifth Circuit Courts often combine them in analyzing class settlements. *ODonnell*, 2019 WL 4224040, at *8; *Al's Pals Pet Care v. Woodforest Nat'l Bank*, NA, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019).

Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Fifth Circuit's *Reed* factors, this Court should grant preliminary approval and approve the Notice Plan.

**1. Plaintiffs and Class Counsel have Adequately Represented the Settlement Class (Fed. R. Civ. P. 23(e)(2)(A))**

As discussed at Section VI(A)(4) *supra*, Plaintiffs, like all Settlement Class Members, have been the subjects of the same Data Breach, and thus have common interests with the Settlement Class. Moreover, they have ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the investigation of the case, remaining available for consultation throughout mediation, reviewing the Settlement documents, and answering Class Counsel's questions. Joint Decl., ¶¶ 17–18.

Class Counsel too have vigorously pursued the interests of the Settlement Class in securing a Settlement that brings immediate benefits to Settlement Class Members while avoiding the risks

of continued litigation. In doing so, they leaned on their extensive experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery received during the course of their negotiations. *Id.* ¶¶ 14–15. As such, this factor warrants preliminary approval.

**2. The Settlement Is the Product of Good-Faith Arm's-Length Negotiations, and Is Absent of Any Collusion (Fed. R. Civ. P. 23(e)(2)(B)).**

"The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010); *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018). A settlement reached with the aid of an experienced and well-known mediator is a strong indicator of procedural fairness and receives a presumption of reasonableness and the absence of collusion. 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011); *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (Lynn, J.).

Here, there is no evidence of fraud or collusion that could possibly be presented. After fully briefing the issues, the Parties attended a day-long mediation where, with the assistance of respected neutral Steven Jaffe, Esq., the Parties eventually agreed to a memorandum of understanding. Joint Decl., ¶¶ 7–10, 13. Following the mediation, the Parties spent further time over the coming weeks negotiating, drafting, and finalizing the finer points of the Settlement Agreement. *Id.* ¶ 9. Moreover, the proposed Settlement also does not favor any Settlement Class Member or group of Settlement Class Members. *Vaughn v. Am., Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007). Thus, and in absence of any facts suggesting negotiations were at

all improper, the presumption of reasonableness should apply here, and Plaintiffs should be found to have met this requirement.

**3. The Settlement Agreement Provides Substantial Relief to the Settlement Class, in Light of the Uncertainty of Prevailing on the Merits, the Effectiveness of the Proposed Distribution of Relief, and the Attorneys' Fees Sought (Fed. R. Civ. P. 23(e)(2)(C)).**

Most importantly, the Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Breach. Thus, the third and most important factor weighs heavily in favor of preliminary approval.

First, the Settlement establishes a $1.65 million Settlement Fund from which all Settlement Class Members can seek compensation for out-of-pocket losses up to $5,000.00 or file a claim for a *pro rata* cash payment estimated at $50.00 each and claim two years of identity theft protection with two years of Medical credit monitoring. SA, ¶ 72. Further, the Settlement Agreement requires AllerVie to implement and continue business practice enhancements to adequately secure its systems and environments presently and in the future which will benefit all Settlement Class Members; regardless of whether they choose to file a claim. *Id.*

The Settlement is well within the range of approved data breach class action settlements in Texas and throughout the country. A comparison of a simple amount recovered per class member in other data breach settlements demonstrates that this Settlement provides an excellent recovery and is well within the range of approval. Here, the value per Settlement Class Member of just the $1,650,000.00 cash portion of the Settlement amounts to $20.63 per Class Member. This greatly exceeds the cash value recovered in many other data breach settlements:

| **Case Title** | **Settlement Amount** | **No. of Class Members** | **$ Per Class Member** |
|---|---|---|---|
| *Adlouni v. UCLA Health Systems Auxiliary, et al.*, No. BC 589243 (Los Angeles Super. Ct.) | $2M | 4.5M | $0.44 |
| *Atkinson, et al. v. Minted, Inc.*, No. 3:20-cv-03869-VC (C.D. Cal.) | $5M | 4.1M | $1.22 |
| *In re: Wright & Filippis, LLC.*, No. 2:22-cv-12908-SFC-EAS (E.D. Mich.) | $2.9M | 877,584 | $3.30 |
| *Winstead v. ComplyRight, Inc.*, No. 1:18-CV-4990 (N.D. Ill.) | $3.025M | 665,689 | $4.54 |
| *Madkin v. Automation Personnel Services, Inc.*, No. 2:21-cv-1177 (N.D. Ala.) | 1.37M | 299,253 | $4.59 |
| *Bingaman, et al. v. Avem Health Partners Inc.,* Case No. CIV23-130-SLP (W.D. Ok.) | $1.45M | 271,303 | $5.34 |
| *Kesner, et al. v. UMass Memorial Health Care, Inc.*, No. 2185-cv-01210 (Mass. Supp. Ct.) | $1.25M | 209,047 | $5.74 |

Moreover, the attorneys' fees agreed to under the Settlement constitute one-third of the $1.65 million Settlement Fund. Attorneys' fees requests in the amount of one-third of a common fund are regularly granted by Fifth Circuit courts. *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). *See also In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *1 (W.D. La. Oct. 31, 2006) (awarding class counsel 36% of the common fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1132, 1135–36, 1138, 1140 (W.D. La. 1997) (awarding class counsel 36% of the common fund, amounting to approximately $46 million). Plaintiffs will more fully address this issue in their motion for attorneys' fees and reimbursement of litigation expenses, which will be filed prior to the Final Approval Hearing.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that AllerVie asserts a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Plaintiffs dispute the defenses AllerVie asserts—but it is obvious that their success in pretrial motion practice and at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

**4. The Proposed Settlement Treats Settlement Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D)).**

Here, the proposed Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class Members are eligible to make a claim for the same amount of out-of-pocket expense reimbursements or a *pro rata* payment. Moreover, all Settlement Class Members may choose to receive two years of Medical credit monitoring. Importantly, direct Notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the Settlement. This factor thus also weighs in favor of preliminary approval.

### 5. The *Reed* Factors Considered by Fifth Circuit Courts also Weigh in Favor of Preliminary Approval.

The factors considered by the Fifth Circuit prior to the amendment of Rule 23, and still considered by those Courts today, also weigh in favor of final approval.

*First*, as discussed at length above, there is no evidence that the Settlement is the result of fraud or collusion between the Parties but was reached by an arm's-length negotiation with an experienced neutral mediator. *Supra*, § V.B.ii.

*Second*, continued litigation is likely to be complex, lengthy, and expensive. Aside from the potential that either side will lose at trial, the Plaintiffs anticipate incurring substantial additional costs in pursuing this litigation further. Joint Decl., ¶¶ 26–27. Should litigation continue, Plaintiffs would likely need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Class. *Id.* The level of additional costs would significantly increase as Plaintiffs began their preparations for the certification argument and if successful, a near inevitable interlocutory appeal attempt. Indeed, courts have recognized that because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled, . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015); *In re TikTok, Inc. Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) ("Data privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty" in litigating.); *Fox*, 2021 WL 826741, at *5; *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ("Data breach litigation is evolving; there is no guarantee of the ultimate result ... [and they] are particularly risky, expensive, and complex.").

*Third*, Settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could comprehensively understand the strengths and weaknesses of Plaintiffs' claims and AllerVie's defenses. Joint Decl., ¶ 10. Where ample information exists with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent preliminary approval of a settlement. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1877).

*Fourth,* continued litigation presents substantial risks. As discussed above, data breach cases like this one generally face substantial hurdles—even to simply clear the pleading stage. § V(B)(3), *supra*.

*Fifth*, the Settlement negotiated here provides for recovery that equals or surpasses that of similar settlements approved by courts across the country. § V(B)(3), *supra*.

*Sixth*, while this factor is most appropriately examined after the Class has been issued notice and had a chance to respond, Plaintiffs have no reason to believe there will be any antagonism to the Settlement. Plaintiffs approve the terms of the Settlement and believe that it is favorable for the Settlement Class. Similarly, Class Counsel, with their depth of experience in litigating data breach class actions, maintain that the Settlement provides significant relief to Members of the Class and is fair, reasonable, adequate, and worthy of preliminary approval. Joint Decl., ¶¶ 30–33. This belief is supported by the chart given above.

Thus, these additional factors weigh in favor of approving a result exactly like that obtained by Plaintiffs and Class Counsel: significant cash payments for all Settlement Class Members who submit valid claims, additional credit monitoring services, and business practice commitments on the part of AllerVie's to secure Class Members' PII moving forward.

**C. The Court Should Appoint Class Counsel.**

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(4). In making this determination, the Court considers counsel's work in identifying or investigating potential claims, experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law, and resources committed to representing the class. *Id.* at (g)(1)(A)(i–iv). As evidenced by the Joint Declaration, the proposed Settlement Class Counsel meets these requirements. Joint Decl., Exhibit A–D. The Court should preliminarily appoint the experienced team of William B. Federman, Raina Borrelli, Gary M. Klinger, and Leanna A. Loginov as Class Counsel under Rule 23(g).

**D. The Proposed Claims Administrator Will Provide Adequate Notice.**

The court has complete discretion in determining what constitutes a reasonable notice scheme, both in terms of how notice is given and what it contains. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2006). Due process requires provision of the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. *See* Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Such Notice should be individual, where class members can be identified through reasonable effort. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974).

The Notice provided for by the Settlement is designed to be the best practicable and to meet all the criteria set forth by the Manual for Complex Litigation. SA, Exhibit B; SA, § VIII. Specifically, the Notice Plan provides for direct and individual notice to be provided to all

Settlement Class Members via mail, using that same contact information that were used by AllerVie to mail notices of the Data Incident. SA, ¶ 81. In addition to the individual direct notice provided, the Claims Administrator will establish and maintain a dedicated Settlement Website that will be updated throughout the claims period with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement and other relevant court documents. *Id.* ¶ 82. The Settlement Administrator will also maintain a toll-free telephone line for Settlement Class Members to obtain additional information. *Id.* ¶ 79(f).

The Notices themselves are clear and straightforward. *Id.*, Exhibits B and C. They define the Class; clearly describe the options available to Settlement Class Members and the deadlines for taking action; describe the essential terms of the settlement; disclose the requested service award for the Class Representatives as well as the amount that proposed Settlement Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; and will describe the date, time, and place of the Final Fairness Hearing. *Id.*

The direct mail Notice proposed here is the gold standard and is consistent with Notice programs approved in this Circuit. *See Stott v. Cap. Fin. Servs.*, 277 F.R.D. at 342 (approving notice sent to all class members by first class mail); *Billitteri v. Secs. Am., Inc.*, Nos. 3:09-cv-01568- F, 3:10-cv-01833-F, 2011 WL 3586217, at *9 (N.D. Tex. Aug. 4, 2011) (same). The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. Accordingly, the Notice process should be approved by this Court.

## VI. CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief. For these and the above reasons, Plaintiffs respectfully request this Court grant their Motion for Preliminary Approval of Class Action

Settlement, certify the Settlement Class, and direct that Notice be issued to Settlement Class Members.

Dated: August 7, 2026

Respectfully submitted,

*/s/ William B. Federman*
William B. Federman (Texas SBN 00794935)
**FEDERMAN & SHERWOOD**
4131 North Central Expressway, Ste. 900
Dallas, TX 75204
Telephone: (800) 237-1277
wbf@federmanlaw.com

Raina C Borrelli
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave.
Suite 1610
Chicago, IL 60611
raina@straussborrelli.com

Gary Michael Klinger
**MILBERG PLLC**
227 W. Monroe Street
Suite 2100
Chicago, IL 60606
gklinger@milberg.com

Leanna A. Loginov
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
lloginov@shamisgentile.com

*Interim Class Counsel*

## CERTIFICATE OF CONFERENCE

I hereby certify that the undersigned have conferred with opposing counsel for who have advised that Defendant does not oppose the relief requested herein.

*/s/ William B. Federman*

**CERTIFICATE OF SERVICE**

I hereby certify that on Friday, August 7, 2026, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ William B. Federman*